Slip Op. 17-79

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BEIJING TIANHAI INDUSTRY CO., LTD., | : |
| Plaintiff, | : |
| v. | : Before: Richard K. Eaton, Judge |
| UNITED STATES, | : Court No. 12-00203 |
| Defendant, | : |
| and | : |
| NORRIS CYLINDER COMPANY, | : |
| Defendant-Intervenor. | : |

## **OPINION and ORDER**

[Plaintiff's Rule 54(b) motion is granted, and the United States Department of Commerce's Final Results of Redetermination Pursuant to Court Remand are remanded.]

Dated: July 5, 2017

*Mark E. Pardo*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, DC, argued for plaintiff. With him on the brief were *Andrew T. Schutz* and *Brandon M. Petelin*.

*Douglas G. Edelschick*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With him on the brief were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Franklin E. White, Jr.* Assistant Director. Of counsel on the brief was *Michael T. Gagain*, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

*Edward M. Lebow*, Haynes and Boone, LLP, of Washington, DC, argued for defendant-intervenor. With him on the brief was *Nora L. Whitehead*.

Eaton, Judge: The United States Department of Commerce's ("Commerce" or the

"Department") second results of redetermination pursuant to the court's remand order in *Beijing*

*Tianhai Industry Co. v. United States*, 39 CIT __, 106 F. Supp. 3d 1342 (2015) ("*BTIC II*") and the parties' comments are before the court. *See* Final Results of Redetermination Pursuant to Court Remand (Dep't Commerce Feb. 8, 2016) ("Second Remand Results"); *see also* Pl.'s Cmts. Second Remand Results, ECF No. 108; Def.'s Resp. Pl.'s Cmts. Second Remand Results, ECF No. 112; Def.-Int.'s Resp. Pl.'s Cmts. Second Remand Results, ECF No. 113.

Also before the court is the Rule 54(b) motion of plaintiff Beijing Tianhai Industry Co. ("plaintiff" or "BTIC"), seeking to revise the court's interlocutory decision in *Beijing Tianhai Industry Co. v. United States*, 38 CIT __, 7 F. Supp. 3d 1318 (2014) ("*BTIC I*") in light of the United States Court of Appeals for the Federal Circuit's decision in *Mid Continent Nail Corp. v. United States*, 846 F.3d 1364 (Fed. Cir. 2017). *See* Pl.'s R. 54(b) Mot. Revise J., ECF No. 121 ("Pl.'s R. 54(b) Mot.").

Defendant the United States ("defendant" or "Government"), on behalf of Commerce, and defendant-intervenor Norris Cylinder Company ("defendant-intervenor" or "Norris") oppose the motion. *See* Def.'s Resp. Pl.'s R. 54(b) Mot., ECF No. 122 ("Def.'s R. 54(b) Resp."); Def.-Int.'s Resp. Pl.'s R. 54(b) Mot., ECF No. 123 ("Def.-Int.'s R. 54(b) Resp.").

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012) and 19 U.S.C. § 1516a(a)(2)(B)(i) (2012). For the reasons that follow, the court grants plaintiff's Rule 54(b) motion and remands this matter to Commerce.


## BACKGROUND

The pertinent background facts are set forth in the court's opinions in *BTIC I* and *BTIC II*, and are supplemented here.

In May 2012, Commerce made its final affirmative less-than-fair-value determination on imports of high pressure steel cylinders from the People's Republic of China ("PRC"). *See High Pressure Steel Cylinders From the PRC*, 77 Fed. Reg. 26,739 (Dep't Commerce May 7, 2012) (final determination), and accompanying Issues and Decision Memorandum ("Issues & Dec. Mem.") (collectively, "Final Determination"). Commerce found that BTIC had engaged in targeted dumping by time period, *i.e.*, from October 1, 2010, through December 31, 2010, and assigned it a 6.62 percent margin. *See* Issues & Dec. Mem., Cmt. 4; *see also High Pressure Steel Cylinders From the PRC*, 77 Fed. Reg. 37,377 (Dep't Commerce June 21, 2012) (antidumping duty order).

To calculate BTIC's margin, Commerce used the average-to-transaction ("A-T") method[1] because it found that its normally used average-to-average ("A-A") method[2] "conceal[ed] differences in price patterns between the targeted and non-targeted groups by averaging low-priced sales to the targeted group with high-priced sales to the non-targeted group." Issues & Dec. Mem. at 24. Commerce applied the A-T method, with zeroing,[3] not only to those sales that Commerce determined constituted a pattern of export prices that "differed significantly" among

---

[1]      The A-T method compares "the weighted average of the normal values to the export prices (or constructed export prices) of individual transactions for comparable merchandise . . . ." 19 U.S.C. § 1677f-1(d)(1)(B).

[2]      The A-A method compares "the weighted average of the normal values to the weighted average of the export prices (and constructed export prices) for comparable merchandise . . . ." 19 U.S.C. § 1677f-1(d)(1)(A)(i).

[3]      Zeroing is a method used for calculating an exporter's weighted average dumping margin "where negative dumping margins (i.e., margins of sales of merchandise sold at nondumped prices) are given a value of zero and only positive dumping margins (i.e., margins for sales of merchandise sold at dumped prices) are aggregated." *Union Steel v. United States*, 713 F.3d 1101, 1104 (Fed. Cir. 2013).

time periods, *i.e.*, 10 transactions representing 5.04 percent of the volume of BTIC's U.S. sales,

but to *all* of BTIC's U.S. sales during the period of investigation, *i.e.*, October 1, 2010, to March

31, 2011 ("POI"). *See* Issues & Dec. Mem., Cmt. 4.

Plaintiff filed its motion for judgment on the agency record in April 2013. *See* Pl.'s Mem.

Supp. Mot. J. Agency R., ECF No. 32 ("Pl.'s Mem."). Among the issues raised in plaintiff's

opening brief was whether Commerce's practice of applying the A-T method to all of BTIC's

U.S. sales, not just the "targeted dumped" sales, contravened the language and intent of the

targeted dumping statute, 19 U.S.C. § 1677f-1(d)(1)(B) (2006). *See* Pl.'s Mem. 16-18.

Commerce's practice of applying the A-T method to all U.S. sales replaced Commerce's

prior practice, embodied in 19 C.F.R. § 351.414(f)(2) (2007), known as the "Limiting

Regulation." The Limiting Regulation provided, in pertinent part: "Where the criteria for

identifying targeted dumping . . . are satisfied, the Secretary normally will limit the application

of the [A-T] method to those sales that constitute targeted dumping under [19 C.F.R.

§ 351.414(f)(1)(i)]." 19 C.F.R. § 351.414(f)(2). That is, where (1) "there is targeted dumping in

the form of a pattern of export prices . . . for comparable merchandise that differ significantly

among . . . periods of time;" and (2) "[t]he Secretary determines that such differences cannot be

taken into account using the [A-A] method or the [T-T] method and explains the basis for that

determination," then Commerce "normally will limit the application of the [A-T] method to

those sales that constitute targeted dumping . . . ." 19 C.F.R. § 351.414(f)(1)-(2). In 2008,

Commerce attempted to withdraw its regulations governing targeted dumping cases, including 19

C.F.R. § 351.414(f), the provision that contains the Limiting Regulation. *See* Withdrawal of the

Regulatory Provisions Governing Targeted Dumping in Antidumping Duty Investigations, 73

Fed. Reg. 74,930 (Dep't Commerce Dec. 10, 2008) ("Withdrawal Notice").

In its opening brief, plaintiff cited the Limiting Regulation—in particular the rationale underlying the regulation—as support for its argument that applying A-T to all of BTIC's U.S. sales was contrary to law:

> In the preamble to [the Limiting Regulation], Commerce explained that it would be "*unreasonable and totally punitive*" to apply the targeted dumping remedy to all sales in situations in which only a minimal portion of the sales database was found to be targeted. Commerce further noted that application of the targeted dumping remedy would only be appropriate in situations "in which targeted dumping by a firm is so pervasive that the [A-T] method becomes the benchmark for gauging the fairness of that firm's pricing practices." Commerce's withdrawal of this regulation does not alter the fact that Commerce did provide a well reasoned and rational explanation as to why a targeted dumping remedy should be limited to the targeted sales *to avoid unreasonable and unduly punitive results*. Suspiciously absent from Commerce's justification for applying the targeted dumping [remedy] to 100% of BTIC's sales is any reasoned attempt to demonstrate that this approach is not unduly punitive in light of the insignificant portion of sales found to be targeted.

Pl.'s Mem. 22 (quoting *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,375 (Dep't Commerce May 19, 1997) (final rule)). In other words, BTIC cited the Department's own words to challenge the lawfulness of Commerce's practice of applying the A-T method to all U.S. sales, including non-targeted dumped sales, made during the POI on the grounds that it was punitive and unreasonable.

Meanwhile, the validity of Commerce's withdrawal of the Limiting Regulation under the Administrative Procedure Act ("APA") was the subject of litigation before this Court. *See, e.g.*, *Gold East Paper (Jiangsu) Co. v. United States*, 37 CIT __, 918 F. Supp. 2d 1317 (2013); *Mid Continent Nail Corp. v. United States*, 38 CIT __, __, 999 F. Supp. 2d 1307, 1321 (2014), *aff'd* 846 F.3d 1364 (Fed. Cir. 2017) ("Commerce violated its obligation to provide notice and opportunity for comment prior to the rescission of the [Limiting Regulation]."). The Court's opinion in *Gold East Paper (Jiangsu) Co. v. United States* was an interlocutory decision issued

in June 2013—after BTIC's opening brief was filed in this case, but before the Government filed

its response brief. In *Gold East Paper*, this Court held that Commerce's withdrawal of the

Limiting Regulation violated the APA and was therefore invalid. *See Gold East Paper*, 37 CIT at

__, 918 F. Supp. 2d at 1327-28.[4]

On August 2, 2013, the Government filed its response to plaintiff's opening brief. The

Government defended Commerce's application of the A-T method to all of BTIC's U.S. sales

during the POI, and not solely the targeted dumped sales, arguing that Commerce's interpretation

of the targeted dumping statute was in accordance with law. *See* Def.'s Resp. Pl.'s Mot. J.

Agency R., ECF No. 43 ("Def.'s Resp.") 17 ("Commerce is the agency charged with

administering the antidumping statute, and Commerce's interpretation of this statute as

permitting the use of the [A-T] method to all of a respondent's sales is reasonable, consistent

with the remedial purposes of the antidumping law, and entitled to *Chevron* deference.

Accordingly, the Court should sustain Commerce's application of the [A-T] method to all of

BTIC's sales as being in accordance with law."). In addition, in a footnote, defendant called the

court's attention to *Gold East Paper*:

---

[4]       Subsequently, in response to the *Gold East Paper* case, Commerce issued a
Federal Register notice and solicited comments regarding the Department's proposal not to apply
previously withdrawn targeted dumping regulations, including the Limiting Regulation. *See Non-
Application of Previously Withdrawn Regulatory Provisions Governing Targeted Dumping in
Antidumping Duty Investigations*, 78 Fed. Reg. 60,240 (Dep't Commerce Oct. 1, 2013)
(proposed rule). After consideration of the comments received, the Department "continue[d] to
find that the targeted dumping regulations, including 19 CFR 351.414(f)(2) (2007), the 'Limiting
Rule', are inoperative." *Non-Application of Previously Withdrawn Regulatory Provisions
Governing Targeted Dumping in Antidumping Duty Investigations*, 79 Fed. Reg. 22,371, 22,377
(Dep't Commerce Apr. 22, 2014) ("Final Rule"). The final rule deeming the Limiting Regulation
inoperative was effective on May 22, 2014, and applied to investigations commenced on or after
that date. Final Rule, 79 Fed. Reg. at 22,371.

> For the sake of completeness, we note that a recent interlocutory decision of this
> Court held that the regulation, 19 C.F.R. § 351.414(f)(2) (2007), was not properly
> withdrawn, [*Gold East Paper*], but we will not address that complex issue
> because BTIC concedes the regulation has been withdrawn, BTIC has never
> challenged the withdrawal of the regulation at any point during the history of this
> proceeding, and the issue is not before the Court.

Def.'s Resp. 20 n.5 (citations omitted). Defendant-intervenor also referenced *Gold East Paper* in

its response brief, asserting that plaintiff had waived any argument against the validity of the

withdrawal of the Limiting Regulation under the APA because it had not raised that issue in its

opening brief. *See* Def.-Int.'s Resp. Pl.'s Mot. J. Agency R., ECF No. 42, 15 n.8 (citations

omitted) ("Although the validity of Commerce's withdrawal under the [APA] has been discussed

by this Court, most recently in [*Gold East Paper*], BTIC did not challenge the withdrawal's

validity in its [opening] [b]rief. As a result, BTIC has waived its opportunity to make such an

argument in this case.").

Plaintiff filed its reply brief on September 4, 2013, in which it argued that *Gold East*

*Paper* was relevant authority that the court should consider in deciding whether Commerce's

failure to limit the application of the A-T method to its targeted dumped U.S. sales was contrary

to law:

> [T]here is no question that BTIC has challenged the validity of the targeted
> dumping methodology and findings used by Commerce in this investigation and
> that its challenge specifically opposes Commerce's application of the targeted
> dumping remedy to 100% of BTIC's sales. Accordingly, this [C]ourt's recent
> decision in *Gold E. Paper* is relevant to that issue and should be considered in the
> instant case, particularly with respect to the issue of whether it is proper for
> Commerce to apply a targeted dumping remedy to sales that were not found to be
> targeted.

Pl.'s Reply Br., ECF No. 50 ("Pl.'s Reply") 11.

On November 5, 2013, after the close of briefing, the court held oral argument.

Subsequently, BTIC filed two notices of supplemental authority, to which the Government

responded, that addressed the validity of the withdrawal of the Limiting Regulation in light of decisions issued by this Court. *See* Pl.'s Notice of Suppl. Auth., ECF No. 66 (discussing *Timken Co. v. United States*, 38 CIT __, 968 F. Supp. 2d 1279 (2014)); Def.'s Resp. Pl.'s Notice Suppl. Auth., ECF No. 67; Pl.'s Second Notice Suppl. Auth., ECF No. 80 (discussing *Mid Continent*, 38 CIT at __, 999 F. Supp. 2d at 1307); Def.'s Resp. Pl.'s Second Notice Suppl. Auth., ECF No. 81.

The court then ordered that the parties submit additional briefing regarding the "status of the withdrawal of the regulation limiting [Commerce's] application of the [A-T] method under 19 U.S.C. 1677f-1(d)(1)(B) (2006) to sales that have been identified as targeted." Order of Apr. 30, 2014, ECF No. 70. The court ordered briefing on five issues, including "[w]hether plaintiff[] [had] waived consideration of this issue by failing to raise it in [its] initial brief."[5] *Id.*

---

[5]     The court ordered briefing on the following issues:

(1) Whether plaintiff[] [has] waived consideration of [the issue of the status of the withdrawal of the Limiting Regulation] by failing to raise it in [its] initial brief.

(2) The adequacy of the two Comment Requests. In particular, the nature of the responses to these requests and what further or different response might have resulted had interested parties known that the Department was considering withdrawing the regulation.

(3) The significance, if any, of the labeling of the Dec. 10, 2008 Federal Register entry as an "interim final rule," whether the Department received any response to its provision of an opportunity to comment on the withdrawal, the nature of the responses, if any, and any further action the Department took with respect to the "interim final rule."

(4) The holding in *Gold East Paper* and the footnote in *Baroque Timber Indus. (Zhongshan) Co. v. United States*, 37 CIT __, __, 925 F. Supp. 2d 1332, 1340 n.10 (2013).

(5) Whether the methodology described in the rule was being applied at the time of the Dec. 10, 2008 Federal Register entry.

(footnote continued)

In its supplemental brief, plaintiff argued against a finding of waiver:

> The court's consideration of the legal status of Commerce's targeted dumping regulation, [*i.e.*, the Limiting Regulation,] and the effect of that regulation on the underlying proceeding, does not require the court to resolve any new legal claim. Rather, it requires the court to apply the *proper construction of governing law* to claims that Plaintiff has already indisputably asserted and briefed in this case.

Pl.'s Suppl. Br. Pursuant to Ct. Apr. 30, 2014 Order, ECF No. 77, 2.

Defendant and defendant-intervenor argued that despite having challenged the validity of the withdrawal of the Limiting Regulation under the APA before Commerce, plaintiff failed to raise that issue in its opening brief before the court and, as a result, waived any argument regarding the validity of the withdrawal. *See* Def.'s Suppl. Br., ECF No. 75, 1-2; *see also* Def.- Int.'s Suppl. Br. Regarding the Withdrawal of 19 C.F.R. § 351.414(f) (2007), ECF No. 76, 1-5.

After receiving the parties' supplemental briefs, the court issued *BTIC I*. There, the court discussed the regulatory framework applicable to targeted dumping cases. With respect to the Limiting Regulation, the court stated:

> The withdrawn regulation . . . required [Commerce] to identify the set of sales that made up the "pattern of export prices" constituting the targeted dumping, and to limit its application of the A-T methodology to those sales. Thus, were the regulation in effect for this case, the A-T methodology would be applied only for the October 1, 2010 to December 31, 2010 period. Following withdrawal, however, the regulation no longer prohibited [Commerce] from applying A-T to all of a respondent's sales and thus no longer restricted the use of A-T to only those sales that constitute the pattern of "targeted dumping."

*BTIC I*, 38 CIT at __, 7 F. Supp. 3d at 1327. The court declined to reach defendant's claim that plaintiff had waived any argument that the Limiting Regulation was improperly withdrawn, holding that even if the withdrawal was executed improperly, plaintiff could not show that it had

Order of Apr. 30, 2014, ECF No. 70.

been harmed by Commerce's error. *Id*. at __, 7 F. Supp. 3d at 1332 n.7 & 1333 (applying a harmless error analysis and noting that, at that time, "the Federal Circuit ha[d] not passed on the applicability of the harmless error rule in the context of a violation of the notice and comment requirements of the APA . . ."). Accordingly, the court concluded that "as part of its analysis on remand in this case, the Department need not adhere to the requirements of 19 C.F.R. § 351.414(f) (2007)." *Id*. at __, 7 F. Supp. 3d at 1337.

The court went on to examine, among other issues, whether Commerce had satisfied the requirements of 19 U.S.C. § 1677f-1(d)(1)(B)(i) and (ii).[6] Holding that Commerce had not satisfied the explanation requirement in clause (ii), the court remanded for Commerce to explain adequately "why the standard methodologies [*i.e.*, the A-A method and the T-T method] cannot account for the pattern identified under 19 U.S.C. § 1677f-1(d)(1)(B)(i) . . . ." *BTIC I*, 38 CIT at __, 7 F. Supp. 3d at 1338.

In *BTIC II*, the court considered the first remand results and held that Commerce had explained adequately why the T-T method was not appropriate to use in this case, but remanded a second time solely for Commerce to explain why the A-A method could not account for the differences in the observed pattern of prices. *BTIC II*, 39 CIT at __, 106 F. Supp. 3d at 1349-50, 1351. In accordance with the court's remand instructions, Commerce issued the Second Remand Results, which are currently before the court.

---

[6]      In *BTIC I*, the court held that plaintiff had failed to exhaust its administrative remedies with respect to its claim that Commerce had not satisfied the pattern requirement of 19 U.S.C. § 1677f-1(d)(1)(B)(i). Therefore, the court declined to consider that claim. *BTIC I*, 38 CIT at __, 7 F. Supp. 3d at 1331.

In the Second Remand Results, Commerce continued to find that "the [A-A] method cannot take into account the pattern of prices that differ significantly for BTIC," and, therefore, that using the A-T method was appropriate in this investigation. Second Remand Results at 10. By way of explanation, Commerce stated that on remand it applied a "meaningful difference" analysis, "under which the Department compare[d] the weighted-average dumping margins calculated using the standard [A-A] method and an alternative comparison method based on the [A-T] method." Second Remand Results at 5. In making these margin calculations, Commerce continued to use U.S. prices that reflected 100 percent of BTIC's U.S. sales. Applying the "meaningful difference" analysis here, Commerce found that "the masking in this investigation is such that the [A-A] method showed no amount of dumping at all," whereas "[b]y contrast, the [A-T] method revealed above *de minimis* dumping."[7] Second Remand Results at 9-10. In other words, for Commerce, the difference between a zero percent margin and a non-*de minimis* margin was "meaningful," and justified the use of the A-T method.

After the Second Remand Results were published, the Federal Circuit issued its *Mid Continent* decision. The *Mid Continent* Court held that Commerce violated the APA by failing to provide notice and an opportunity to comment prior to withdrawing the Limiting Regulation.

---

[7]     In the Second Remand Results, Commerce set out a number of hypothetical scenarios to demonstrate that applying the A-T method would only be appropriate under certain limited circumstances. Specifically, A-T will be appropriate

> where there is an identifiable above *de minimis* amount of dumping along with an amount of offsets generated from non-dumped sales such that the amount of dumping is changed by a meaningful amount when those offsets are applied. Both [the amount of dumping and the amount of offsets] are measured relative to the total export value (*i.e.*, absolute price level) of the subject merchandise sold by the exporter in the U.S. market.

Second Remand Results at 9.

*Mid Continent*, 846 F.3d at 1386. The Court also held that Commerce's failure to provide notice and an opportunity to comment prior to withdrawing the Limiting Regulation was not harmless error. *Id.* ("Commerce failed to comply with notice-and-comment rulemaking under the APA by repealing the Limiting Regulation in *Withdrawal Notice*, [and] that its failure cannot be excused for good cause or harmless error . . . .").

As a result of the Federal Circuit's decision, it is clear that the Limiting Regulation was in effect between December 10, 2008, when Commerce attempted unsuccessfully to withdraw it, and May 22, 2014, the effective date of the final rule withdrawing the Limiting Regulation after notice and comment. *See id.* at 1372. That is, the Limiting Regulation was in effect at the time Commerce issued the Final Determination.

In the wake of the *Mid Continent* decision, plaintiff filed a motion pursuant to Rule 54(b), urging the court to revise its decision in *BTIC I* in light of the Federal Circuit's holdings.

## STANDARD OF REVIEW

"The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Regarding the court's review of interlocutory decisions, Rule 54(b) provides in pertinent part, "any order or other decision . . . that adjudicates fewer than all of the claims . . . does not end the action as to any of the claims . . . and may be revised at any time before the entry of a judgment adjudicating all the claims . . . ." USCIT 54(b). This Court has held that it may reconsider a prior, non-final decision pursuant to its plenary power, which is recognized by Rule

54(b). *Union Steel v. United States*, 36 CIT __, __, 836 F. Supp. 2d 1382, 1394 (2012) (relying

on Rule 54(b) as authority to reconsider the court's affirmance of Commerce's use of zeroing in

a prior, non-final decision); *Timken Co. v. United States*, 6 CIT 76, 77, 569 F. Supp. 65, 68

(1983) ("[T]he court retains the plenary power to modify or alter its prior non-final rulings,

particularly where the equitable powers of the court are invoked." (citations omitted)).

## DISCUSSION

By its motion, plaintiff asks the court "to exercise its authority, pursuant to Rule

54(b), . . . and remand this Civil Action to [Commerce] with instructions to recalculate BTIC's

margin of dumping to conform to the decision by the [Federal Circuit], in [*Mid Continent*]." Pl.'s

R. 54(b) Mot. 1. The Government "agree[s] with BTIC that [*Mid Continent*] now controls the

merits of the issue regarding the withdrawn regulation"; however, it urges the court to rule on the

"separate but related question of whether BTIC had waived its arguments concerning the

withdrawn regulation in this case," which the court declined to consider in *BTIC I*. Def.'s R.

54(b) Resp. 1. For its part, Norris urges the court to deny plaintiff's Rule 54(b) motion on the

grounds that *Mid Continent* is "distinguishable" from this case because, unlike the plaintiff in

*Mid Continent*, here BTIC "did not raise the issue [of whether Commerce's withdrawal of the

Limiting Regulation was proper under the APA] in its opening brief, and, therefore, the issue is

not properly before this Court." Def.-Int.'s R. 54(b) Resp. 7. According to defendant-intervenor,

"as BTIC failed to raise the issue of the 2008 Withdrawal, it waived consideration of the issue,

despite any intervening case law." Def.-Int.'s R. 54(b) Resp. 9.

The court finds that remand is appropriate in this case for Commerce to reconsider its application of the A-T method to all of BTIC's sales in light of the Limiting Regulation, which the *Mid Continent* Court found was in effect when Commerce made its Final Determination.

As summarized above, in *BTIC I*, the court addressed plaintiff's argument "that [the Limiting Regulation] was improperly withdrawn and that the Department's application of A-T to all of its sales [was] contrary to that regulation." *BTIC I*, 38 CIT at __, 7 F. Supp. 3d at 1332. The court examined the text of the Limiting Regulation, observing that that "were the regulation in effect for this case, the A-T methodology would be applied only for [the targeted dumping period, *i.e.*,] the October 1, 2010 to December 31, 2010 period." *Id.* at __, 7 F. Supp. 3d at 1327. The court held, however, that since the Limiting Regulation was not in effect at the time Commerce made its Final Determination, Commerce was not prohibited from applying A-T to all of BTIC's sales. *Id.* at __, 7 F. Supp. 3d at 1327. Further, the court held that even if the Limiting Regulation was improperly withdrawn for failure to comply with the APA notice-and-comment requirement, plaintiff would not have a claim to that effect because BTIC could not show that it was harmed by Commerce's error. *Id.* at __, 7 F. Supp. 3d at 1333 ("While it may be that the Withdrawal Notice failed to comply with the APA's notice and comment requirement, plaintiff's argument that the Department must continue to apply 19 C.F.R. § 351.414(f) (2007) in this case is unpersuasive. That is, even if Commerce erred in its issuance of the Withdrawal Notice, that error is harmless as it applies to plaintiff, and the Department is not bound by the withdrawn regulation here."). Based on its harmless error ruling, the court in turn decided that it did not have to reach the waiver issue. *See id.* at __, 7 F. Supp. 3d at 1332 n.7 ("The Department and defendant-intervenor have argued that this claim should be deemed waived because of

plaintiff's failure to raise this issue in its opening brief. Because the court finds that plaintiff's

argument fails on the merits, it declines to reach the waiver issue.").

Generally, under the doctrine of the law of the case, "when a court decides upon a rule of

law, that decision should continue to govern the same issues in subsequent stages in the same

case." *Arizona v. California*, 460 U.S. 605, 618 (1983) (citations omitted). However, there are

well-established exceptions to this rule. For example, the law of the case does not preclude a

court from revisiting an issue on which it has ruled in an earlier stage of a litigation "where

'controlling authority has since made a contrary decision of the law applicable to the issues.'"

*Koyo Seiko Co. v. United States*, 95 F.3d 1094, 1097 (Fed. Cir. 1996) (quoting *Gould, Inc. v.*

*United States*, 67 F.3d 925, 930 (Fed. Cir. 1995)).

*Mid Continent* makes it clear that Commerce's failure to comply with notice-and-

comment rulemaking invalidated the withdrawal of the Limiting Regulation under the APA and

that this failure to comply was not excusable as harmless error. *See Mid Continent*, 846 F.3d at

1386 ("Commerce failed to comply with notice-and-comment rulemaking under the APA by

repealing the Limiting Regulation in [the] *Withdrawal Notice*, [and] that its failure cannot be

excused for good cause or harmless error . . . ."). In light of *Mid Continent*, therefore, the legal

basis for the court's rulings on the applicability of the Limiting Regulation and harmless error in

*BTIC I* no longer holds, and remand is appropriate for Commerce to consider the Limiting

Regulation in determining the scope of sales to which the A-T method ought to apply. *See Koyo*

*Seiko Co.*, 95 F.3d at 1097; *see also SKF USA, Inc. v. United States*, 254 F.3d 1022, 1028 (Fed.

Cir. 2001) ("A remand is generally required if the intervening event [*e.g.*, a new legal decision,]

may affect the validity of the agency action.").

The Government's and Norris' arguments on waiver do not persuade the court otherwise. Federal Circuit case law on waiver teaches that, generally, "arguments not raised in the opening brief are waived." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) (citation omitted); *see also Novosteel SA v. United States*, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002). However, the doctrine of waiver is a prudential rule, and considerations of "litigation fairness and procedure" may guide a court's decision as to whether a party has waived an issue. *See Novosteel SA*, 284 F.3d at 1274 (ruling that "[a]s a matter of litigation fairness and procedure," an issue was waived "given that the parties must give a trial court a fair opportunity to rule on an issue other than by raising that issue for the first time in a reply brief"); *see also United States v. Ford Motor Co.*, 463 F.3d 1267, 1277 (Fed. Cir. 2006) ("It is unfair to consider an argument to which the government has been given no opportunity to respond.").

This not a case where a new legal theory was raised for the first time in the plaintiff's reply brief, thereby depriving the defendant of a fair opportunity to respond to the plaintiff's claim. In its opening brief, BTIC made a substantive legal challenge to Commerce's practice of applying the A-T method to all of its sales, not just those identified as targeted dumped sales—a practice that, while not prohibited, was not Commerce's preferred or "normal" practice under the Limiting Regulation. Plaintiff used the rationale of the Limiting Regulation to support its argument that the practice of applying A-T to all sales was contrary to law. In its reply brief, plaintiff responded to the defendant's arguments that certain cases issued by this Court, including *Gold East Paper*, were not relevant to the issues in this case. Plaintiff argued that such cases were, indeed, relevant to the question of the lawfulness of Commerce's practice of applying A-T to all of BTIC's U.S. sales and that the court ought to consider them. *See* Pl.'s Reply 11.

Moreover, there can be no serious dispute that all parties have had an opportunity to be heard on the 2008 withdrawal of the Limiting Regulation. In light of *Gold East Paper*, the court decided it would be assisted by additional briefing on the status of the purportedly withdrawn Limiting Regulation. Plaintiff, the Government, and Norris filed the requested briefs. After this additional briefing and oral argument, the court in *BTIC I* ruled on the status of the Limiting Regulation and found that it was not in effect. The court also held that even if Commerce's withdrawal of the Limiting Regulation was in error, plaintiff could not establish that it had been harmed by that error. These issues are among those addressed by the Federal Circuit in *Mid Continent*.

Accordingly, since *Mid Continent* is an intervening controlling authority that bears on the court's rulings in *BTIC I* that Commerce was not required to apply the Limiting Regulation and that the withdrawal of the Limiting Regulation was harmless error as to plaintiff, issues with respect to which the parties have had ample opportunity to be heard, the court concludes that remand is appropriate. *SKF USA, Inc.*, 254 F.3d at 1028.

Since the Limiting Regulation was in effect at the time of the Final Determination, Commerce must apply this regulation. *BTIC I*, 38 CIT at __, 7 F. Supp. 3d at 1326 ("[O]nce the Department has promulgated a regulation, it is obliged to follow its own regulation so long as the regulation remains in force." (citing *Pujiang Talent Diamond Tools Co. v. United States*, 37 CIT __, __, Slip Op. 13-58 at 15 (May 3, 2013), *aff'd* 561 Fed. Appx. 988 (Fed. Cir. 2014))). Accordingly, on remand Commerce shall reconsider: (1) its determination that 19 U.S.C. § 1677f-1(d)(1)(B)(ii) may be satisfied by applying a "meaningful difference" analysis that relies on 100 percent of BTIC's U.S. sales; and (2) should it continue to determine that using the A-T

method is appropriate, the scope of BTIC's U.S. sales to which the A-T method applies, and revise its dumping margin calculations as may be appropriate.

## CONCLUSION

In accordance with the foregoing, it is hereby

**ORDERED** that this matter is remanded to Commerce; and it is further

**ORDERED** that the remand results shall be filed on or before August 4, 2017; comments to the remand results shall be due thirty (30) days following filing of the remand results; and replies to such comments shall be due fifteen (15) days following filing of the comments.

_____/s/ Richard K. Eaton_____
                                                        Richard K. Eaton, Judge

Dated:  July 5, 2017
            New York, New York